1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9              **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11    MARVIN HARRIS,                        No. CIV S-08-1615-GEB-CMK-P

12                    Plaintiff,

13          vs.                             <u>ORDER</u>

14    JAMES WALKER, et al.,

15                    Defendants.

16    _____/

17              Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant

18    to 42 U.S.C. § 1983.  Pending before the court is plaintiff's complaint (Doc. 1).

19              The court is required to screen complaints brought by prisoners seeking relief

20    against a governmental entity or officer or employee of a governmental entity.  <u>See</u> 28 U.S.C.

21    § 1915A(a).  The court must dismiss a complaint or portion thereof if it: (1) is frivolous or

22    malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief

23    from a defendant who is immune from such relief.  <u>See</u> 28 U.S.C. § 1915A(b)(1), (2).  Moreover,

24    the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain

25    statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

26    This means that claims must be stated simply, concisely, and directly.  <u>See</u> <u>McHenry v. Renne</u>,

                                            1

1   84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)).  These rules are satisfied

2   if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon

3   which it rests.  See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996).  Because plaintiff must

4   allege with at least some degree of particularity overt acts by specific defendants which support

5   the claims, vague and conclusory allegations fail to satisfy this standard.  Additionally, it is

6   impossible for the court to conduct the screening required by law when the allegations are vague

7   and conclusory.

8

9                          **I.  PLAINTIFF'S ALLEGATIONS**

10            Plaintiff names the following as defendants:  Walker, Willimaon, Hronek,

11  Moreno, and Igbokwe.  Plaintiff claims that, on May 29, 2008, defendant Williamson filed a

12  "false report" that plaintiff was qualified for double-cell status, even though he has been on

13  single-cell status since December 2006.  Plaintiff adds that defendant Walker "gave me . . . single

14  cell."  Plaintiff asserts that defendant Williamson threatened to punish him "for refusing to go in

15  a cell with . . . inmate Ford. . . who be cutting on his body all day everyday try to commit suicide

16  deliberately killing oneself."   Plaintiff appears to allege that he is under imminent danger of

17  physical injury as a result of being forced to share a cell with inmate Ford.

18            Apparently referring to a rules violation disciplinary proceedings, plaintiff stated

19  that defendant Igbokwe refused to investigate his concerns about inmate Ford and also refused to

20  "initiate an investigation of . . . material defense witnesses."  Returning to defendant Williamson,

21  plaintiff claims that he "deprived [plaintiff] of his right to appeal staff misconduct by either lose

22  [sic] or destroying his [inmate grievances]."  Plaintiff adds that defendant Williamson "violated

23  his due process rights by failing to answer [inmate grievances] to cover up staff misconduct."  As

24  to Hronek and Moreno, other than asserting that they acted under color of state law, plaintiff does

25  not set forth any specific factual allegations.

26  / / /

1  Plaintiff seeks injunctive relief in the form of an order returning him to single-cell

2  status.  He also seeks compensatory and punitive damages in the total amount of $100,000.00.

3

4  ## II.  DISCUSSION

5  It appears that the gravamen of plaintiff's complaint is his assertion that defendant

6  Williamson falsified a document which resulted in termination of his single-cell status and

7  placement in a shared cell with inmate Ford.  It is also possible that plaintiff's complaint presents

8  a claim based on disregard for a risk to inmate safety based on plaintiff's allegation that he is

9  under threat if imminent harm from inmate Ford, whom plaintiff claims to be suicidal and

10  violent.  Further, it is possible that plaintiff is asserting a due process claim based on improper

11  procedures followed during a disciplinary process initiated after plaintiff refused to be housed

12  with inmate Ford.  Finally, plaintiff's references to his inmate grievances suggest some kind of

13  claim based on that process.

14  For the reasons discussed below, the court finds that plaintiff has not adequately

15  alleged a cognizable claim against any named defendant.  The court will address defects relating

16  to the possible substantive claims in addition to pleading defects as to specific defendants.

17  **A.**     **Defects in Possible Substantive Claims**

18  As discussed above, it is possible plaintiff is attempting to assert one or more of

19  the following claims:  (1) a due process claim based on defendant Williamson's alleged

20  falsification of documents; (2) a due process claim based on procedures used in a prison

21  disciplinary proceeding; (3) a safety claim based on danger allegedly posed by inmate Ford's

22  suicidality and violent behavior; and (4) a claim based on refusal to respond to plaintiff's inmate

23  grievance.  As currently plead, the complaint does not state a cognizable claim under any of these

24  theories.

25  / / /

26  / / /

1          1.       Due Process

2          The Due Process Clause protects prisoners from being deprived of life, liberty, or

3    property without due process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  In order to

4    state a claim of deprivation of due process, a plaintiff must allege the existence of a liberty or

5    property interest for which the protection is sought.  See Ingraham v. Wright, 430 U.S. 651, 672

6    (1977); Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972).  Due process protects against the

7    deprivation of property where there is a legitimate claim of entitlement to the property.  See Bd.

8    of Regents, 408 U.S. at 577.  Protected property interests are created, and their dimensions are

9    defined, by existing rules that stem from an independent source – such as state law – and which

10   secure certain benefits and support claims of entitlement to those benefits.  See id.

11         Liberty interests can arise both from the Constitution and from state law.  See

12   Hewitt v. Helms, 459 U.S. 460, 466 (1983); Meachum v. Fano, 427 U.S. 215, 224-27 (1976);

13   Smith v. Sumner, 994 F.2d 1401, 1405 (9th Cir. 1993).  In determining whether the Constitution

14   itself protects a liberty interest, the court should consider whether the practice in question ". . . is

15   within the normal limits or range of custody which the conviction has authorized the State to

16   impose."  Wolff, 418 U.S. at 557-58; Smith, 994 F.2d at 1405.  Applying this standard, the

17   Supreme Court has concluded that the Constitution itself provides no liberty interest in good-

18   time credits, see Wolff, 418 U.S. at 557; in remaining in the general population, see Sandin v.

19   Conner, 515 U.S. 472, 485-86 (1995); in not losing privileges, see Baxter v. Palmigiano, 425

20   U.S. 308, 323 (1976); in staying at a particular institution, see Meachum, 427 U.S. at 225-27; or

21   in remaining in a prison in a particular state, see Olim v. Wakinekona, 461 U.S. 238, 245-47

22   (1983).

23         In determining whether state law confers a liberty interest, the Supreme Court has

24   adopted an approach in which the existence of a liberty interest is determined by focusing on the

25   nature of the deprivation.  See Sandin v. Connor, 515 U.S. 472, 481-84 (1995).  In doing so, the

26   Court has held that state law creates a liberty interest deserving of protection only where the

deprivation in question: (1) restrains the inmate's freedom in a manner not expected from the sentence; and (2) "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 483-84. Prisoners in California have a liberty interest in the procedures used in prison disciplinary hearings where a successful claim would not necessarily shorten the prisoner's sentence. See Ramirez v. Galaza, 334 F.3d 850, 853, 859 (9th Cir. 2003) (concluding that a due process challenge to a prison disciplinary hearing which did not result in the loss of good-time credits was cognizable under § 1983); see also Wilkinson v. Dotson, 544 U.S. 74, 82 (2005) (concluding that claims which did not seek earlier or immediate release from prison were cognizable under § 1983).

Finally, with respect to prison disciplinary proceedings, due process requires prison officials to provide the inmate with: (1) a written statement at least 24 hours before the disciplinary hearing that includes the charges, a description of the evidence against the inmate, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance where the charges are complex or the inmate is illiterate. See Wolff, 418 U.S. at 563-70. Due process is satisfied where these minimum requirements have been met, see Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994), and where there is "some evidence" in the record as a whole which supports the decision of the hearing officer, see Superintendent v. Hill, 472 U.S. 445, 455 (1985). The "some evidence" standard is not particularly stringent and is satisfied where "there is any evidence in the record that could support the conclusion reached." Id. at 455-56. However, a due process claim challenging the loss of good-time credits as a result of an adverse prison disciplinary finding is not cognizable under § 1983 and must be raised by way of habeas corpus. See Blueford v. Prunty, 108 F.3d 251, 255 (9th Cir. 1997).

/ / /

/ / /

/ / /

1         To the extent plaintiff claims a due process violation based on defendant

2    Williamson's alleged falsification of document which resulted in termination of his single-cell

3    status, plaintiff has not alleged that state law creates any right to single-cell status.  Absent a

4    liberty interest in single-cell status, there can be no due process violation.  To the extent plaintiff

5    asserts a due process violation based on improper procedures used in his prison disciplinary

6    hearing, plaintiff has not specifically alleged that such a hearing ever occurred.  And, even if one

7    did, he has not alleged which procedural safeguards to which he was entitled were denied.

8         2.   <u>Safety</u>

9         The treatment a prisoner receives in prison and the conditions under which the

10   prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel

11   and unusual punishment.  <u>See</u> <u>Helling v. McKinney</u>, 509 U.S. 25, 31 (1993); <u>Farmer v. Brennan</u>,

12   511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts

13   of dignity, civilized standards, humanity, and decency." <u>Estelle v. Gamble</u>, 429 U.S. 97, 102

14   (1976).  Conditions of confinement may, however, be harsh and restrictive.  <u>See</u> <u>Rhodes v.</u>

15   <u>Chapman</u>, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with

16   "food, clothing, shelter, sanitation, medical care, and personal safety." <u>Toussaint v. McCarthy</u>,

17   801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only

18   when two requirements are met: (1) objectively, the official's act or omission must be so serious

19   such that it results in the denial of the minimal civilized measure of life's necessities; and (2)

20   subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of

21   inflicting harm.  <u>See</u> <u>Farmer</u>, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison

22   official must have a "sufficiently culpable mind."  <u>See</u> <u>id.</u>

23        Under these principles, prison officials have a duty to take reasonable steps to

24   protect inmates from physical abuse.  <u>See</u> <u>Hoptowit v. Ray</u>, 682 F.2d 1237, 1250-51 (9th Cir.

25   1982); <u>Farmer</u>, 511 U.S. at 833.  Liability exists only when two requirements are met:  (1)

26   objectively, the prisoner was incarcerated under conditions presenting a substantial risk of

serious harm; and (2) subjectively, prison officials knew of and disregarded the risk.  See Farmer, 511 U.S. at 837.  The very obviousness of the risk may suffice to establish the knowledge element.  See Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).  Prison officials are not liable, however, if evidence is presented that they lacked knowledge of a safety risk.  See Farmer, 511 U.S. at 844.  The knowledge element does not require that the plaintiff prove that prison officials know for a certainty that the inmate's safety is in danger, but it requires proof of more than a mere suspicion of danger.  See Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986).  Finally, the plaintiff must show that prison officials disregarded a risk.  Thus, where prison officials actually knew of a substantial risk, they are not liable if they took reasonable steps to respond to the risk, even if harm ultimately was not averted.  See Farmer, 511 U.S. at 844.

Plaintiff has not stated a cognizable safety claim for at least two reasons.  First, he has not sufficiently alleged that inmate Ford posed a danger to him.  While he claims that inmate Ford was suicidal and violent in the sense that he would "cut[] on his body all day everyday try to commit suicide," plaintiff has not alleged facts to suggest that inmate Ford poses a risk to anyone else.  Second, plaintiff has not alleged facts to suggest that any defendant knew of a danger posed by inmate Ford.

### 3.    Grievance Process

Prisoners have no stand-alone due process right to the administrative grievance process.  See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (holding that there is no liberty interest entitling inmates to a specific grievance process).  Therefore, plaintiff cannot sustain a claim based solely on the allegation that defendants refused to respond to his grievances.

/ / /

/ / /

/ / /

/ / /

7

**B.**   **Pleading Defects**

In addition to the defects outlined above, plaintiff's complaint suffers from a defect relating to the specific defendants.  In particular, plaintiff has not alleged a sufficient causal connection between an alleged constitutional violation and the named defendants.  To state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual connection or link between the actions of the named defendants and the alleged deprivations.  See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).  Rather, the plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged constitutional deprivation.  See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

Supervisory personnel are generally not liable under § 1983 for the actions of their employees.  See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983).  A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations, or had actual knowledge of the violations and failed to act to prevent them.  See id.  When a defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

/ / /

1

**III.  CONCLUSION**

2       Because it is possible that most of the deficiencies identified in this order may be

3  cured by amending the complaint, plaintiff is entitled to leave to amend prior to dismissal of the

4  entire action.  See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc).

5  Plaintiff is informed that, as a general rule, an amended complaint supersedes the original

6  complaint.  See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992).  Thus, following

7  dismissal with leave to amend, all claims alleged in the original complaint which are not alleged

8  in the amended complaint are waived.  See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987).

9  Therefore, if plaintiff amends the complaint, the court cannot refer to the prior pleading in order

10  to make plaintiff's amended complaint complete.  See Local Rule 15-220.  An amended

11  complaint must be complete in itself without reference to any prior pleading.  See id.

12       If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the

13  conditions complained of have resulted in a deprivation of plaintiff's constitutional rights.  See

14  Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  The complaint must allege in specific terms how

15  each named defendant is involved, and must set forth some affirmative link or connection

16  between each defendant's actions and the claimed deprivation.  See May v. Enomoto, 633 F.2d

17  164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

18       Finally, plaintiff is warned that failure to file an amended complaint within the

19  time provided in this order may be grounds for dismissal of this action.  See Ferdik, 963 F.2d at

20  1260-61; see also Local Rule 11-110.  Plaintiff is also warned that a complaint which fails to

21  comply with Rule 8 may, in the court's discretion, be dismissed with prejudice pursuant to Rule

22  41(b).  See Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981).

23  / / /

24  / / /

25  / / /

26  / / /

1          Accordingly, IT IS HEREBY ORDERED that:

2          1.      Plaintiff's complaint is dismissed with leave to amend; and

3          2.      Plaintiff shall file a first amended complaint within 30 days of the date of

4    service of this order.

5

6    DATED:  October 28, 2008

7

8                                          CRAIG M. KELLISON
                                           UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26